# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Senior Judge Marcia S. Krieger

Civil Action No. 17-CV-2550-MSK-NYW

MARCO'S FRANCHISING LLC, and
MP MARKS LLC,

      **Plaintiffs,**

*v.*

MARCO'S COAL FIRED PIZZA INC.,
MARCO'S COAL FIRED PIZZA GOLDEN LLC,
MARCO'S COAL FIRED PIZZA CASPER LLC,
MARCO'S VALLAGIO LLC,
RACCA'S PIZZERIA NAPOLETANA INC.,
MARK DYM,
KRISTY LATORRACA-DYM, and
MARCO'S COAL FIRED PIZZERIA COLFAX LLC,

      **Defendants.**

---

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

---

      **THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment (**# 109**), the Plaintiffs' Response (**# 116**), and the Defendants' Reply (**# 118**). For the reasons that follow, the Motion is granted, in part.

## I.  JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

## II. BACKGROUND[1]

This case involves a trademark dispute between a national pizza chain and local pizza restaurants, both using the name Marco. The Plaintiffs (collectively "Marco's") operate a national network of franchised pizza restaurants under the brand name Marco's Pizza. Marco's holds six federally registered trademarks that it uses in conjunction with its business, but only two are primarily at issue for purposes of the instant Motion:

- A word mark consisting of the word MARCO'S, first used on July 31, 1978, and registered on December 4, 2012.

- A design mark consisting of the words MARCO'S PIZZA in a stylized font with a cartoon of a slice of pizza used in place of the apostrophe, first used on December 31, 1985, and registered on November 19, 2013 (the "design mark").[2]

For many years after its founding in the early 1980s, Marco's operated primarily in Ohio and Michigan. By 2007, it had added operations in Indiana, Arizona, Nevada, North Carolina, and Wisconsin, and in September 2007, it announced plans to expand to Georgia and Florida. The business did not arrive in Colorado until February 2008, when it entered into a franchise

---

[1] The Court recounts the undisputed facts and the disputed facts in the light most favorable to the Plaintiffs, the nonmoving parties. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

[2] The MARCO'S word and design marks were registered within the five years preceding this lawsuit, entitling them to less protection than the other four marks, which is why the Defendants direct their trademark-infringement arguments against these marks and not the others. The details and descriptions of the other four marks are not particularly important to the Court's analysis, as their existence is only implicated by the Defendants' affirmative defense of laches and Marco's claim for dilution. Suffice it to say, the marks include: a word mark consisting of the words MARCO'S PIZZA, two variations on a cartoon drawing of a mustachioed chef wearing a toque and tossing a circle of pizza dough in the air, with the words *Chef Marco* written in script on the crown of the toque, and a design mark consisting of a "puffy," balloon-like letter M, with a drawing of a six-slice pizza with a missing slice (the absence of which forms the upper wedge of the *M*) and the word *marco's* in a stylized curving font inside it.

agreement with Rodman Schley, providing Mr. Schley rights to establish Marco's franchises anywhere in Colorado.  It does not appear from the record that Mr. Schley began actually operating franchises until approximately 2009.

The Defendants are restaurants owned and operated by Defendants Mark and Kristy Latorraca-Dym (the Dyms).  They created Defendant Marco's Coal Fired Pizza Inc. ("MCF")[3] in June 2008, opening a restaurant under the name Marco's Coal-Fired Pizza at a location in the Ballpark neighborhood of Denver.   At that time, MCF used a roughly triangular design mark that consisted of three stacked rows of text ("Marco's / Coal-Fired / Pizzeria") above a drawing of a puff of smoke.   On December 18, 2008, Marco's sent a letter to MCF, advising MCF of Marco's trademark registration of the MARCO'S PIZZA mark and requesting that MCF "provide us with copies or other evidence of your First use of the name 'Marco's' so that we might determine if you are legally entitled to some use of the same".[4]  (**# 109-8 at 2**.)  MCF responded, acknowledging "your client's ownership of the registered trademark MARCO'S PIZZA," but noted that, because the mark incorporated a name, it was not likely to be considered distinctive and lead to a likelihood of confusion with MCF's use of the MARCO'S COAL-FIRED PIZZA mark.  (**# 109-9 at 1**.)  It also noted that Marco's had yet to open any locations in Colorado, and thus, due to its prior use, MCF "would be deemed the senior user of the mark in Colorado, particularly in Denver."  (**# 109-9 at 2**.)  Marco's chose not to take any further action at the time.

---

[3]  For convenience, the Court will also generally use "MCF" in this Opinion to refer collectively to the Defendants.

[4]  The letter also noted that Marco's had "sold the development rights to open Marco's Pizza stores in the State of Colorado," and that the purchaser "plans to start developing stores in the near future."  (**# 109-8 at 2**.)

In or about 2010, MCF opened a second location in the Denver Tech Center operated by Defendant Marco's Vallagio LLC. (The Court understands that, notwithstanding its name, the Tech Center location continued to use the same MARCO'S COAL-FIRED PIZZA mark as the Ballpark location.) In 2015, MCF opened two additional locations, Defendants Marco's Coal Fired Pizza Casper LLC in Casper, Wyoming, and Marco's Coal Fired Pizza Golden LLC, in Golden, Colorado.[5] However, these two locations opened under the name Racca's Pizzeria Napoletana instead. Also in 2015, MCF rebranded the existing Ballpark and Tech Center locations to use the Racca's name, ceasing to use the MARCO'S COAL-FIRED PIZZA mark entirely. There is some dispute in the record as to why MCF undertook the name change, and there is at least some evidence that customer confusion between MCF and Marco's locations was a contributing factor. By mid-July 2017, the Dyms concluded that the rebranding of the Ballpark and Tech Center locations as Racca's was a mistake, and they resumed use of the MARCO'S COAL-FIRED PIZZA mark at those locations. Shortly thereafter, Marco's commenced this lawsuit.

Marco's Amended Complaint (**# 88**) asserts eight claims: (1) trademark infringement under the Lanham Act (15 U.S.C. § 1114) against each of the entity defendants; (2) contributory infringement against the Dyms; (3) unfair competition under the Lanham Act (15 U.S.C. § 1125) against the entity defendants; (4) contributory unfair competition against the Dyms; (5) trademark dilution (15 U.S.C. § 1125) against all Defendants; (6) unfair competition under Colorado law against all Defendants; and (7) deceptive business practices (C.R.S. § 6-1-105) against all Defendants; and (8) a claim for an accounting against all Defendants.

---

[5] Two additional entity defendants were formed by the Dyms but have never operated a restaurant: Racca's Pizzeria Napoletana Inc. (RPN) and Marco's Coal Fired Pizzeria Colfax LLC.

In response, the Defendants assert three counterclaims: (1) a claim pursuant to 15 U.S.C. § 1064(3), seeking to cancel Marco's registration of the MARCO'S word mark as having been fraudulently obtained, due to Marco's principals falsely attesting in their 2012 and 2013 registration applications that they were aware of no other entity having the right to use the MARCO'S mark in commerce despite being aware of MCF's use of a MARCO'S mark since 2008; (2) a claim pursuant to 15 U.S.C. § 1064(3) to cancel Marco's registration of the MARCO'S word mark was being merely descriptive and lacking in any secondary meaning associating it with Marco's; and (3) a claim by the entity Defendants for a declaration that their use of the MARCO'S COAL-FIRED PIZZA mark does not infringe any of Marco's marks.

The Defendants now move for summary judgment on certain claims and counterclaims (**# 109**). Specifically, they argue that: (1) the Golden, Casper, Colfax, and Racca's Defendants are entitled to summary judgment on all claims asserted against them insofar as Marco's cannot demonstrate that any of these Defendants used *any* of the Marco's marks; (2) they are entitled to summary judgment on their counterclaim seeking cancellation of the MARCO'S word mark due to fraud; (3) they are entitled to judgment on their counterclaim contending that the MARCO'S word mark is not inherently distinctive and lacked secondary meaning in the market as of 2008; (4) all Defendants are entitled to judgment in their favor on their affirmative defenses of laches or acquiescence, given that Marco's made no efforts to enforce its marks between 2008 and 2017; (5) Marco's cannot establish its claim for trademark dilution because it cannot show that MCF began using any of Marco's marks after they had become famous; and (6) Marco's cannot establish its claim for an accounting because it cannot show that the Dyms acted in bad faith when selecting the MARCO'S COAL-FIRED PIZZA mark.

### III.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. DISCUSSION

This case presents multiple claims against multiple defendants based on multiple trademarks. Practically, each claim is comprised of six sub-claims, one for each trademark. It is helpful to group the Defendants' arguments in their Motion for Summary Judgment according to the claims to which each applies.

- As to all claims on *all six marks*, the Golden, Casper, Colfax, and RPN Defendants claim that they are entitled to judgment because the Plaintiffs cannot establish that they have ever used the marks.

- As to the claims for trademark infringement and unfair competition based *only* on the MARCO'S word and design marks, all the Defendants assert fraudulent registration and seek cancellation of the MARCO'S word mark.

- As to the claims for trademark infringement and unfair competition based *only* on the MARCO'S word and design marks, all the Defendants assert invalidity (no secondary meaning) and seek judgment for cancellation of the MARCO'S word mark.

- As to all claims based on *all six marks*, all the Defendants argue that they are entitled to judgment on the affirmative defenses of laches and acquiescence.

- As to the dilution claim based on *all six marks*, all the Defendants assert a defense that the Marco's marks are not famous.

- As to the claim for accounting, all the Defendants contend Marco's cannot show they acted in bad faith.

### A. Claims Against the Casper, Golden, Colfax, and RPN Defendants

MCF argues that Marco's cannot establish any of its claims against the Golden, Casper, Colfax, and RPN Defendants because it cannot show that any of these Defendants made any use of Marco's marks. Indeed, the Defendants have come forward with evidence, in the form of Mr. Dym's affidavit, that Defendant Colfax was formed speculatively and has never actually conducted any business of any kind beyond acquiring a parcel of real property, and that Defendant RPN was formed for unknown reasons but has never conducted business operations of any kind. (**# 109-2 ¶ 19**.) As to the two remaining entities, Golden and Casper, Mr. Dym's affidavit establishes that these businesses have always operated under the Racca's name and have never used any variation of any Marco's mark. (**# 109-2 ¶ 18**.)

Curiously, Marco's Response does not address the fact that the Colfax and RPN Defendants have never had any operations at all. Rather, Marco's simply lumps all four Defendants together and argues that: (1) those businesses routinely used "Powered by Marco's Coal Fired Pizza" in their advertising; (2) that three of the four Defendants have the phrase "Marco's Coal Fired Pizza" in their name; and (3) that the Dyms act as the agents of each of the four Defendants such that the Dyms' use of Marco's marks in other businesses somehow operate to bind the four Defendants here. The Court summarily rejects the second and third arguments, as Marco's cites no authority for the proposition that a business' selection of a particular legal name that is otherwise never used in advertising or otherwise displayed to consumers can

constitute trademark infringement or any other violations asserted herein. *See, e.g.*, *Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013) (essential to all Lanham Act claims is the use of a mark "in commerce," which inquires "whether the trademark has been displayed *to consumers* in connection with a commercial transaction" (emphasis added)). The Court further rejects the suggestion that, as a matter of agency law, the actions of a party's agent on behalf of unrelated businesses can operate to bind the principal.

Thus, the Court turns its attention to Marco's contention that these Defendants have used the phrase "Powered by Marco's Coal Fired Pizza" as part of their advertising. Marco's points to the following items of evidence in support of this contention:

- The Defendants' Responses to Requests for Production state that the Casper Defendant at one time had a tagline of "Racca's: Powered by Marco's Coal Fired Pizza," at an unspecified time, but that it subsequently discontinued use of this phrase. (**# 116-13 ¶ 13**.)

- Mr. Dym's deposition testimony about the Casper location that confirmed that "at some point we put 'powered by Marco's Coal Fired Pizzeria'" on the Casper location's website. (**# 116-14 at 59:23–60:1**.)

- Certain attachments to a letter written by Marco's counsel[6] in this action that purport to depict screenshots of the website *raccaspizzeria.com* as of September 10, 2018, which show the use of the phrase "Powered by Marco's Coal Fired Pizza" (and which also depict the use the MCF triangular design mark). (**# 93-2 at 8–10**.)

---

[6] The Court has some doubt as to whether this evidence is presently in an admissible form, but because it is duplicative of other evidence in the record on this point, the Court need not consider that issue.

- A set of photos, identified by Marco's as simply "documents produced by the Defendants" and which appear to be titled "Discovery Assessment" (**# 116-10**) and prepared by a public relations firm for the use of Racca's, which includes a single slide bearing the same *Powered by Marco's* text that appears on the *raccaspizzaeria.com* website as set forth above.[7]

The Court finds that Marco's has come forward with no evidence whatsoever to suggest that the Colfax and RPN Defendants have ever had any operations whatsoever, much less that they made any use of Marco's marks in commerce.[8] Thus, these Defendants are entitled to summary judgment on all claims. The Court further finds that nothing in the record indicates that the Golden Defendant ever made any use of the *Powered by Marco's* language. Although there is some evidence that the business using the *raccaspizzeria.com* website has used the *Powered by Marco's* language, the evidence in the record suggests that this website belongs to the Casper Defendant. Certainly, Marco's has not come forward with any evidence to indicate that website is also used by the Golden Defendant. Accordingly, the Court finds that Marco's has failed to come forward with evidence indication that the Golden Defendant has engaged in any use of any Marco's mark, so it, too, is entitled to summary judgment on all claims.[9]

---

[7] Marco's also points to evidence of the use of the *Powered by Marco's* language on the door of the Tech Center location, but the Vallagio Defendant, the operator of the Tech Center location, is not one of the Defendants moving in this portion of the Motion.

[8] This conclusion is so obvious that the Court has concerns about the rigorousness of Marco's legal and factual analysis and the degree to which it has discharged its duty of candor to the Court.

[9] All of Marco's claims beyond the Lanham Act require use in commerce such that this determination applies to every claim based on all six marks. *See Rosetta Stone Ltd. v. Google Inc.*, 676 F.3d 144, 168 (4th Cir. 2012) (dilution); *HealthONE of Denver Inc v. UnitedHealth Grp.*, 805 F. Supp. 2d 1115, 1124 (D. Colo. 2011) (the defendant must unfairly use the name for unfair competition); C.R.S. § 6-1-105(1)(g) (requiring disparagement by misrepresentation of

The record does reflect that the Casper Defendant has used the *Powered by Marco's* language. The Court does not understand the Defendants' Motion to separately argue that the use of *Powered by Marco's* is insufficient to support Marco's claims for infringement, dilution, *etc.* as a substantive matter (except as set forth below). Accordingly, summary judgment in favor of the Casper Defendant is inappropriate.

## B. Counterclaims for Cancellation

The Court turns next to the Defendants' counterclaims, which seek to cancel the registration of the MARCO'S word and design marks due to fraud and as being insufficiently distinctive. In challenging the distinctiveness of those marks, MCF also seeks summary judgment in its favor on Marco's claims for trademark infringement and unfair competition under the Lanham Act.

### 1. Fraudulent Registration

The registration of a trademark with the U.S. Patent and Trademark Office (PTO) entitles the registrant to certain advantages and presumptions. But 15 U.S.C. § 1604(3) provides a mechanism[10] by which a person can petition for the cancellation of a registration upon a showing that "the registration was obtained fraudulently." A party seeking to obtain cancellation of a registration due to fraud must show: (1) a false representation by the registrant regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance by the PTO upon that misrepresentation; (4) actual reliance

---

fact, alleged here as using the Marco's marks for the Defendants' own goods). As for Claim 8, which is a remedy upon a finding of trademark infringement, there can be no remedy without underlying infringement. *See W. Diversified Servs. Inc. v. Hyundai Motor Am. Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005).

[10] Although the statute refers to the filing of a petition to cancel with the PTO, 15 U.S.C. § 1119 permits courts hearing cases involving registered marks to "determine the right to registration, [or] order the cancellation of registrations."

by the PTO upon the misrepresentation; and (5) damages proximately flowing from that reliance. *OTR Wheel Eng'g Inc. v. West Worldwide Servs. Inc.*, 897 F.3d 1008, 1019 (9th Cir. 2018). Notably, there is a difference between a *false* statement and a *fraudulent* one, and the registrant's intent to deceive is essential, as misunderstanding, inadvertence, negligent omission and other failures will not suffice. *Metro Traffic Control Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997). A party asserting fraudulent registration bears the burden of proving the fraud by clear and convincing evidence. *Beer Nuts Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 942 (10th Cir. 1983).

MCF alleges that on January 16, 2012, Marco's applied for the registration of the MARCO'S word mark. The application was signed by John Butorac, Marco's president and chief executive. Mr. Butorac's signature is found beneath a "Declaration" section that asserts, under penalty of perjury, that Mr. Butorac believes Marco's "to be the owner of the trademark[] sought to be registered," that he believes Marco's "to be entitled to use such mark in commerce," and that "to the best of his[] knowledge and belief, no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance [as to] cause confusion." (# **109-16 at 6**.) MCF contends that, as of that date, Mr. Butorac was well aware of several other businesses that were using variations of a MARCO'S mark in conjunction with the sale of pizza. Specifically, MCF points to:

- A January 4, 2012, letter sent by Marco's law firm to Frank Nuccio, owner of a business named Pompeii Pizza in Dallas, Texas. (# **109-17 at 1–2**.) The letter notes Marco's intention to expand into Dallas, but also states its understanding that Mr. Nuccio did business under the name Pizza By Marco's in Dallas and had done so since 1956. Acknowledging that such use "pre-dates Marco's 1978 first use date,"

Marco's stated that if "this is correct, you will be entitled to continue to use the PIZZA BY MARCO name and mark" in the Dallas area.[11]  Marco's corporate representative testified in a deposition that Mr. Butorac would have "probably informally" signed off on the decision to issue the letter to Mr. Nuccio and that it was Marco's legal department's obligation to "certainly alert" Mr. Butorac if it discovered potential infringements of Marco's marks.  (**# 109-7 at 132:11–15**.)  In response, Marco's has submitted a somewhat carefully-worded affidavit from Mr. Butorac that states that Mr. Butorac "is aware" of the situation with Mr. Nuccio *today*, but Mr. Butorac does not indicate his awareness of that situation as of 2012.  He further states that Marco's "did not believe that" Mr. Nuccio had "an accurate claim" to the use of the MARCO'S mark, even though Marco's lawyers apparently did.  (**# 116-4 ¶ 13**.)

- In disclosure documents issued to potential franchisees as of May 2013, Marco's represented that it was "generally aware that there may be other food service or pizza business[es] that use the name 'Marco's' or 'Marco's Pizza' and we make no claim that we are the only food service or pizza business entitled to use the name 'Marco's' or 'Marco's Pizza'.  Among others, we are aware of businesses in Ash[e]ville and Mocksville, N.C., Bethlehem and New Town, Pa., Rock Hill, S.C., Dallas, Texas, Milwaukee, Wisconsin, and Denver, Colorado that use and have used the name 'Marco's Pizza' or similar derivations for several years."  These businesses may or may not be infringing on one or more of our marks."  (**# 109-4 at 4**.)

- Since 2008, Marco's has been aware of MCF's use of variants of a MARCO'S mark and its claim to priority in use of that mark in the Denver area.  (**# 109-8**.)

---

[11]  In 2013, after Mr. Butorac's declaration, Marco's purchased from Mr. Nuccio any rights he may have had in the PIZZA BY MARCO mark.

Although the Court concedes that there is significant evidence in the record that suggests that Marco's was *generally* aware of the possibility (if not likelihood) of others with superior rights to variants of the MARCO'S mark as of 2012, and that there is even evidence of Mr. Butorac's *specific* knowledge of at least one instance of an individual with superior rights to a MARCO'S mark in January 2012, the Court is not prepared to find that, as a matter of law, MCF has carried its burden of demonstrating Mr. Butorac's fraudulent intent by clear and convincing evidence on this record. As *Metro Traffic* makes clear, a false statement is not necessarily a fraudulent one, 104 F.3d at 340, and although it certainly appears that Mr. Butorac's statement that no one else had superior rights to the MARCO'S mark in January 2012 is false, the record is not necessarily undisputedly clear and convincing that Mr. Butorac *knew* that. It may be that Mr. Butorac was unaware of the situation with Mr. Nuccio, or that he received inaccurate or confusing legal advice from Marco's legal representatives about the status of Mr. Nuccio's rights. Because it is MCF's burden to show, by clear and convincing evidence, Mr. Butorac's specific intent to deceive, the Court cannot say that the evidence in the record rises to that level.[12] Thus, MCF's counterclaim seeking cancellation of the MARCO'S mark due to fraud will await trial.

### 2. Lack of Distinctiveness

MCF also seeks judgment on its counterclaim seeking to cancel the MARCO'S word and marks due to a lack of distinctiveness. It is essential that a registered mark be *distinctive* in one of several senses, and upon a showing that a registered mark lacks necessary distinctiveness, a

---

[12] This is not to suggest that Marco's would be entitled to summary judgment in its favor on MCF's counterclaim for cancellation. It may very well be that the factfinder concludes that Mr. Butorac clearly knew of the situation with Mr. Nuccio, as well as of Marco's lawyers' belief that Mr. Nuccio's rights to the MARCO'S mark were superior as of the time Mr. Butorac sought to register that mark. Such evidence would be sufficient, if believed by the factfinder, to support MCF's counterclaim and require cancellation of the MARCO'S mark.

court may cancel that registration. *Streamline Prod. Sys. Inc. v. Streamling Mfg. Inc.*, 851 F.3d 440, 451 (5th Cir. 2017).

A mark is sufficiently distinctive if it is either "inherently distinctive" or, alternatively, if it has "acquired distinctiveness through secondary meaning." *Id.*; 1 J. Thomas McCarthy, *McCarthy on Trademarks* § 3:1 (5th ed. 2017). In assessing whether a mark is *inherently* distinctive, the Court attempts to place it along a continuum from fanciful to generic marks (with arbitrary, suggestive, and descriptive categories in between). *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004). Suggestive, arbitrary, and fanciful marks are inherently distinctive because their nature serves to identify a particular source. *Wal-Mart Stores Inc. v. Samara Bros. Inc.,* 529 U.S. 205, 210–11 (2010). But "descriptive marks are not inherently distinctive" and become protectable only if they acquire distinctiveness through secondary meaning. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1051 (10th Cir. 2008).

The MARCO'S word mark was registered by the PTO in 2012 and the design mark was registered in 2013. Federal registration provides *prima facie* evidence of the mark's validity and entitles the registrant to a strong presumption that the mark is distinctive and protectable. *See Zobmondo Entertainment LLC v. Falls Media LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010); *GTE Corp. v. Williams*, 904 F.2d 536, 538 (10th Cir. 1990). A party opposing registration can meet its burden of production to rebut the presumption by producing evidence sufficient to establish that the mark is merely descriptive or does not have a secondary meaning. *KMMentor LLC v. Knowledge Mgmt. Prof. Soc'y Inc.*, 712 F. Supp. 2d 1222, 1242 (D. Kan. 2010). If the defendant is successful, the presumption drops from the case, leaving the plaintiff with its ultimate burden

of persuasion to prove the mark is protectable. *Amazing Spaces Inc. v. Metro Mini Storage*, 608 F.3d 225, 239 (5th Cir. 2010) (collecting cases).

Because the MARCO'S word mark and the design mark have been registered by the PTO, the Court first considers whether MCF has come forward with evidence that would be sufficient to overcome the presumption of distinctiveness. Personal names are commonly considered a subset of descriptive marks, thus requiring a secondary meaning for protection. *See Peaceable Planet Inc. v. Ty Inc.*, 362 F.3d 986, 988 (7th Cir. 2004); *Marker Int'l v. DeBruler*, 844 F.2d 763, 764 (10th Cir. 1988). The Seventh Circuit has identified three concerns underlying the need for a secondary meaning to make personal-name marks distinctive: (1) a reluctance to forbid a person to use his own name in his own business, (2) the fact that some names are so common (Smith, Jones, *etc.*) that multiple users cannot be confused for each other until they acquire a secondary meaning, and (3) preventing a person from using his name to denote his business may deprive consumers of useful information. *Peaceable Planet*, 362 F.3d at 989.

MCF has come forward with unrebutted evidence that the name Marco, along with its cognate Mark, is among the top 20 most common names given to boys in the United States in the past century. (**# 109-4 ¶ 7**.) (Mark is Mr. Dym's first name and he has gone by the nickname Marco since childhood (**# 109-2 ¶ 3**.)) It has also produced evidence of dozens of businesses operating across the country with some form of the identifier *Marco's* in their name — *e.g.*, Marco's (numerous); Marco's Restaurant (numerous); Marco's Seafood and Oyster Bar; Marco's Mexican Restaurant; Marco's Tavern On Main, Marco's Authentic Italian Gelato, *etc.* (**# 109-4 ¶ 6, at 5–11**.) It does not appear that Marco's (the Plaintiffs here) substantially disagree with the proposition that the name itself is merely descriptive; Marco's summary judgment response brief

instead focuses on the question of secondary meaning. Thus, this Court is satisfied that evidence is unrebutted that the simple name Marco's, as the possessive form of the name Marco or Mark, is commonly used as a description and lacks any inherent distinctiveness.

Although a mark may be simply descriptive in nature, it may nevertheless acquire distinctiveness through secondary meaning. An otherwise descriptive mark acquires a secondary meaning if it has "been used so long and so exclusively by one producer with reference to his goods or articles that, in that trade and to that branch of the purchasing public, the word or phrase [has] come to mean that the article is his product." *Educ. Dev. Corp. v. Econ. Co*., 562 F.2d 26, 29–30 (10th Cir. 1977). Stated differently, a mark has secondary meaning when significant numbers of consumers in that market, when presented with the mark (*e.g.*, "what does MARCO'S mean to you?"), would associate that mark with a particular supplier of goods or services (*e.g.*, "it's that pizza place over on Fourth and Main"). Whether a mark has acquired a secondary meaning is an issue of fact, but where the underlying facts are undisputed, resolution on summary judgment is appropriate. *Marker*, 844 F.2d at 764.

The analysis for secondary meaning is conducted based on the relevant market area where the mark is to be used. In other words, a mark that has substantial market penetration in one location may still lack secondary meaning in a distant market where it is not so well established. Thus, the focus is on the market in which the allegedly infringing defendant operates. *Adray v. Adry-Mart Inc*., 76 F.3d 984, 987 (9th Cir. 1995); *accord First Sav. Bank FSB v. First Bank Sys. Inc*., 101 F.3d 645, 655 n.12 (10th Cir. 1996). A plaintiff must also establish that the secondary meaning existed in the relevant marketplace *prior to* the defendant's use such that the defendant's use constituted infringement at the time that use began. *Scott Paper Co. v. Scott's Liquid Gold Inc*., 589 F.3d 1225, 1231–32 (3d Cir. 1978). Because "the

gravamen of the secondary meaning determination is the empirical question of current consumer association," survey evidence is the most direct and persuasive evidence. *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 253 (5th Cir. 1997), *abrogated on other grounds by TrafFix Devices Inc. v. Marketing Displays Inc.*, 532 U.S. 23 (2001).

Based on these principles, the issue presented is whether there is a genuine dispute of fact as to whether the MARCO'S word mark had a secondary meaning, affiliating it in the minds of the consuming public in and around Denver, Colorado, as of June 2008, when MCF first began using MARCO'S COAL-FIRED PIZZA as its mark (or, for that matter, in 2010, when the Tech Center location also began using that same mark). The evidence is undisputed that Marco's had no franchisees operating in Colorado as of June 2008. Steve Seyfarth, the chief marketing officer at Marco's, testified that Marco's does not generally engage in advertising or marketing in areas where they do not have stores, and he conceded that, as of 2008, "the awareness of the brand in the Colorado market" was "probably very low." (**# 109-5 at 12:16–24**, **16:7–9**.) Marco's asserts that over the "past decade," it has spent "tens of millions of dollars annually . . . advertising and marking the Marco's brand across the country, including in Colorado." (**# 116-2 ¶ 10**.) But that statement's vagueness as to time and geography does not suffice to dispute Mr. Seyfarth's admission that little of that marketing effort was directed towards Colorado as of 2008. Similarly, Mr. Butorac's affidavit stating that Marco's "began marketing and advertising activities in Colorado" as of 2007 (**# 116-4 ¶ 4**) fails to provide any meaningful information about the nature or volume of such advertising, much less demonstrate that it was effective in bringing about a public association between the MARCO'S mark and Marco's itself (especially at a time when there were no Marco's locations in Colorado for the public to patronize).

The lack of market awareness of Marco's and the MARCO'S marks is demonstrated by the only survey evidence in the record, a 2016 study conducted by Marco's itself. That survey revealed that "unaided [customer] awareness" of Marco's in the Denver area "is extremely low (6%)." (**# 109-21 at 3**.) One can reasonably infer that if customer awareness of Marco's was low as of 2016, when Marco's had already been in business in Denver for years, it was likely to be even lower as of 2008, when Marco's had no active operations in the area. Mr. Seyfarth stated that the survey was conducted among customers who lived within a five-mile radius of a Marco's store. (**# 109-5 at 46:6–11**.) Presumably, customer awareness of Marco's outside this range would be even lower. Marco's first three locations in Colorado, all opened in the calendar year 2009, were in Broomfield, Arvada, and Fort Collins. Thus, one would expect little customer awareness of the brand in Denver, where MCF's Ballpark location was operating. Marco's first location in Denver did not open until 2011, well after MCF's Tech Center location had opened.

On these facts, the Court finds that there is no genuine dispute of fact sufficient to warrant a trial. The undisputed evidence is that Marco's engaged in minimal marketing activities in Colorado as of 2008 and 2010, and that it had minimal (if any) degree of customer association between it and the MARCO'S mark as of that time. In such circumstances, no reasonable factfinder could conclude that Marco's could demonstrate a secondary meaning attaching to the MARCO'S mark in Colorado as of 2008 or 2010. Therefore, the Court finds that the MARCO's word mark was not distinctive in Colorado when MCF began using the MARCO'S COAL-

FIRED PIZZA mark. The same analysis applies to Marco's design mark registered in 2013.[13]

The effect of a finding that the MARCO'S word and design marks lacked distinctiveness in Colorado in June 2008 on the claims in this case is somewhat unclear to the Court. MCF has sought summary judgment on Marco's claims of trademark infringement and unfair competition (Claims 1 through 4) only as to the "contestable marks" — namely, the MARCO'S word mark and the design mark. But the Court does not understand MCF to challenge Marco's claims that it has also infringed on the MARCO'S PIZZA word mark which, issued in 1986, is "incontestable", an antiquated term that does not actually mean the mark can never be contested in any respect, but means its *distinctiveness* cannot be contested due to lack of secondary meaning. *See Vail Assoc. v. Vend-Tel-Co.*, 516 F.3d 853, 867 (10th Cir. 2008). Thus, the Court is not inclined to simply enter summary judgment for MCF on all of Claims 1 through 4. At most, it will enter judgment in favor of MCF on those claims *to the extent* they are predicated on infringement of either the MARCO'S word mark or the design mark. Claims 1 through 4 will proceed to trial as to Marco's claims of infringement of the MARCO'S PIZZA word mark (and as to the remaining design marks, to the extent those claims can be asserted consistent with Rule 11(b)).

MCF also seeks judgment on its counterclaim for cancellation of the MARCO'S word and design marks as insufficiently distinctive. For the reasons set forth above, the Court finds that there is no genuine dispute requiring a trial and that, on the facts presented, the marks were

---

[13] Although the parties sometimes reference the design mark, they don't meaningfully address it as a separate issue. There is no indication that MCF is infringing upon the design components of the design mark — *e.g.*, the color or font, or the use of the pizza slice as an apostrophe. Rather, to the extent there is any allegation of infringement of the design mark, it is because the design mark contains the words MARCO'S PIZZA. The Court construes the design mark to suffer from the same flaws as the MARCO'S word mark for the same reasons, and thus disposes of the claims, defenses, and counterclaims relating to the design mark in the same manner as the MARCO'S word mark.

not distinctive as a matter of law as of 2008 and 2010.  Under 15 U.S.C. § 1119, the Court has

the power to order partial cancellation or to redefine the scope of the marks.  5 McCarthy on

Trademarks § 30:109 (citing *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings Inc*.,

696 F.3d 206, 228 (2d Cir. 2012).  Accordingly, given that summary judgment is appropriate on

the Defendants' second counterclaim, the Court will order cancellation of the MARCO'S word

mark and the design mark, but only as to their use in Colorado prior to 2011.  The Court

expresses no opinion as to the distinctiveness, and thus validity, of those marks in Colorado

beginning in after 2011, or their use outside of Colorado thereafter.[14]

## C.  Laches and Acquiescence

MCF seeks summary judgment on its affirmative defenses of laches and acquiescence,

which would foreclose all claims based on all marks.  Unlike the other intellectual-property

fields, the Lanham Act "contains no statute of limitations, and expressly provides for the

defensive use of equitable principles, including laches."  *Petrella v. Metro-Goldwyn-Mayer Inc*.,

572 U.S. 663, 678 n.15 (2014).  To prove the affirmative defense of laches, MCF must show

that: (1) Marco's unreasonably delayed in asserting their claim and (2) MCF was prejudiced by

the delay.[15]  *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997); *see World Champ.*

---

[14]  The parties did not address the question of whether the MARCO'S marks might have acquired secondary meaning in Casper, Wyoming, the location of the remaining Racca's-themed Defendant, and thus, the Court does not consider that question.  The Court is confident that, guided by the reasoning above, the parties can ascertain whether the marks would survive a secondary-meaning analysis in that market as of the pertinent date.

[15]  MCF explains that the defense of laches differs from the defense of acquiescence in that the former requires only passive failure to assert claims, whereas the latter requires affirmative action by the plaintiff that expressed or implied an assurance to the defendant that no claims would be asserted based on the conduct at issue.  (# **109 at 25** (citing *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547–48 (10th Cir. 2000).)  Because the Court finds that easier question of laches must proceed to trial, there is no need to reach the more difficult question of whether MCF can establish its defense of acquiescence.

*Wrestling Inc. v. GJS Int'l Inc.*, 13 F. Supp. 2d 725, 733–34 (N.D. Ill. 1998).

MCF argues that Marco's was aware of its allegedly-infringing conduct as of December 2008, when Marco's wrote to MCF and claimed that MCF's continued use of the MARCO'S COAL-FIRED PIZZA mark would infringe Marco's marks and create customer confusion. When MCF disagreed, Marco's took no further action to assert any claims arising from the use of the various marks. Marco's remained silent about the situation until 2017, when MCF resumed use of the MARCO'S COAL-FIRED PIZZA mark after briefly rebranding its restaurants under the Racca's name. MCF contends that, in the intervening time, it relied on Marco's silence to assume that there was no ongoing dispute concerning its use of the MARCO'S COAL-FIRED PIZZA mark, and that reliance was manifested by MCF opening the Tech Center location, as well as other uses of that mark. Thus, MCF argues that Marco's failure to enforce its Lanham Act claims for many years should now be deemed by the Court to be barred by the doctrine of laches.

Marco's contends that it was initially persuaded by MCF's contention that there was no likelihood of customer confusion between the use of Marco's marks and the use of the MARCO'S COAL-FIRED PIZZA mark by MCF. It was not until "several years" passed and Marco's began to recognize various instances of customer confusion that it decided to commence action. (**# 116 at 35**.) However, by that time, MCF had begun re-branding itself under the Racca's name, and thus, Marco's believed that the situation had been resolved. Once it learned that MCF was returning to the MARCO'S COAL-FIRED PIZZA name and marks, Marco's promptly brought this action.

In assessing whether a party has unreasonably delayed asserting its rights, court will "look to the relevant forum state statute of limitations which best effectuates the federal policy at

issue" and use it "as a benchmark to create a presumption of a defense of laches."  6 *McCarthy on Trademarks* § 31:33; *accord Mionix LLC v. ACS Tech.*, No. 16-CV-2154, 2018 WL 4042729 at *9 (D. Colo. Aug. 24, 2018).  There is no Colorado statute for trademark infringement, but in other cases in this district, Colorado's three-year statute of limitations for fraud and deception has been applied.  *Full Draw Prods. v. Easton Sports Inc.*, 85 F. Supp. 2d 1001, 1011 (D. Colo. 2000) (citing C.R.S. § 13-80-101(1)(c)).  Although the Court agrees that this statute of limitations does not apply in a dispositive manner, it provides "reasonable guidance for the application of the laches defense." *Mionix*, 2018 WL 4042729 at *9.  Thus, the Court's primary consideration is whether Marco's unreasonably delayed asserting claims against MCF for more than three years.

The Court cannot say that, as a matter of law, MCF has established its defense of laches. As MCF notes in its Reply, the court should begin measuring the delay "from the time the plaintiff knew or should have known that it had a provable claim for infringement."  (**# 118 at 9** (citing *Big O Tires Inc. v. Bigfoot 4x4 Inc.*, 167 F. Supp. 2d 1216, 1228–29 (D. Colo. 2001).) But neither side has conclusively demonstrated when Marco's should have known that it could assert a winning infringement claim against MCF.  Taking Marco's at its word — that it was initially persuaded by MCF's contention that the marks were dissimilar enough to avoid customer confusion — Marco's would have realized it had a claim once sufficient instances of actual confusion came to light.  But the record does not reflect when these instances of confusion actually occurred, other than to suggest in retrospect that they may have prompted MCF's 2016 rebranding.  If those instances of confusion occurred in, say, 2009 or 2010, MCF's laches argument might be meritorious.  If, on the other hand, the occurred in 2015 and 2016, the Court finds some merit in Marco's argument that it should not have been expected to bring

infringement claims against MCF once MCF announced its intention to abandon the allegedly infringing mark and adopt an entirely new brand identity.  Accordingly, because the record does not clearly establish facts that demonstrate that Marco's delay was unreasonable as a matter of law, MCF's defenses of laches and acquiescence will proceed to trial.

## D. Dilution

MCF seeks summary judgment on Marco's claims of trademark dilution as to all six Marco's marks.  15 U.S.C. § 1127 defines trademark dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods and services, regardless of the presence or absence of competition between the owner of the famous mark and other parties or likelihood of confusion."  Trademark dilution occurs when a person associates unrelated products with a more famous mark — *e.g.*, "Kodak bicycles, Rolls-Royce radio tubes, and Beech-Nut cigarettes." *Starbucks Corp. v. Wolfe's Borough Coffee Inc.*, 736 F.3d 198, 205–06 (2d Cir. 2013).  Because there is little likelihood of customer confusion between the unrelated products, a copyright infringement claim might not lie in such circumstances.  But such use can cause a "gradual whittling away or dispersion of the identity and hold upon the public mind of the [famous] mark," leading to its dilution or tarnishment through association.  *Id.*

To establish a claim for trademark dilution, the owner of the mark must show that: (1) it owns a famous mark that is distinctive; (2) the defendant uses a mark in commerce that has similarity to the famous mark; (3) the degree of similarity gives rise to an association between the marks; and (4) the association is likely to impair the distinctiveness of the famous mark or harm the reputation of the famous mark.  *Rosetta Stone Ltd. v. Google Inc.*, 676 F.3d 144, 168 (4th Cir. 2012).  For purposes of a dilution claim, a mark's fame is assessed as of the time the

allegedly diluting conduct began.  *See, e.g.*, *Midwestern Pet Foods Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1052 (Fed. Cir. 2012); *Rosetta Stone*, 676 F.3d at 171.

MCF argues that Marco's cannot establish that its marks are famous, much less that they became famous prior to MCF's initial use of the MARCO'S COAL-FIRED PIZZA mark in June 2008.  A mark is famous for purposes of trademark dilution if it "is widely recognized by the general consuming public of the United States."  15 U.S.C. § 1125(c)(2)(A).  Courts use the following factors to determine whether a mark is famous: (1) duration, extent, and geographic reach of advertising and publicity of the mark; (2) amount, volume, and geographic extent of sales; (3) extent of actual recognition of the mark; and (4) whether the mark was registered.  15 U.S.C. § 1125(c)(2)(A)(i)–(iv).  To rise to the requisite level of fame, the mark must amount to a "household name," where, "when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner."  *Kibler v. Hall*, 843 F.3d 1068, 1083 (6th Cir. 2016).  The owner of the mark must demonstrate "that the common or proper noun uses of the term and third-party uses of the mark are now eclipsed by the owner's use of the mark."  *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012).  "This is not an easy standard to achieve," as the mark "must be truly prominent and renowned" to be considered "famous."  *Rosetta Stone*, 676 F.3d at 171; *accord Coach Services,* 668 F.3d at 1373 ("dilution famousness is difficult to prove" and a "rigorous standard").

Marco's argues that its marks rise to the requisite level of fame because: (1) they have been in use for up to 30 years; (2) they are registered; (3) over "past decade," it has spent "tens of millions of dollars to promote and advertise its goods and services in markets all across the country" (**# 116-2 ¶ 10**); (4) that its franchises had $45 million in sales in Colorado between 2015 and 2019 (**# 116-23 at 6–7**); (5) Marco's chief marketing officer testified that the Marco's

Pizza name and brand were "well-known in the markets [it] was in in 2008" (**# 116-26 at 22:8–9**); and (6) its expert believes that "its level of market awareness might be considered quite high" (**# 116-25 ¶ 14**).

The Court finds that Marco's evidence does not rise to the exacting standard required to demonstrate a genuine issue of fact as to whether its marks are famous. First, much of Marco's evidence is temporally irrelevant — evidence of its sales in Colorado from 2015 to 2019, or its millions of dollars in promotional spending "over the past decade" do not suffice to demonstrate the famousness of the mark as early as 2008, when MCF first began use of its own similar mark. Moreover, Marco's own expert essentially concedes that the mark is not particularly famous, acknowledging that the "level of awareness of Marco's is definitely much less than the large national chains that operate across the United States."[16] (**# 116-25 ¶ 14**.) Although there can be little doubt that Marco's has vigorously promoted its business and achieved some degree of current success, nothing in the record suggests that, as of 2008 (or even 2010, when the Tech Center location opened), the general public *nationwide* would have immediately associated any use of the proper name Marco's with Marco's Pizza. Indeed, given that Marco's only had active operations in a handful of states as of 2008, and that Mr. Seyfarth testified that Marco's did not typically advertise in markets where it did not have operations, the evidence dispels any reasonable argument that Marco's was a "household name" in 2008 (much less that it might even be one today). Accordingly, because Marco's has not come forward with evidence sufficient to

---

[16] The expert qualifies his opinion that Marco's "level of market awareness might be considered quite high," by calibrating level of awareness against the depth of market penetration. Large, national pizza chains have high awareness and high market penetration. Marco's has more limited market penetration, and thus more limited brand awareness, but the expert seems to be suggesting that awareness of Marco's identity is atypically high *compared to expectations* one might have for a smaller competitor to the national chains. (*See* **# 116-25 ¶¶ 14–18**.)

create a genuine issue of triable fact as to the fame of its marks as of 2008 and 2010, MCF is entitled to summary judgment on Marco's claim for trademark dilution based on all six marks.

### E. Accounting / Disgorgement

MCF moves for summary judgment on Marco's claim for an accounting and disgorgement of MCF's ill-gained profits, arguing that Marco's cannot establish that MCF engaged in "bad faith" use of Marco's marks. Disgorgement of profits is not automatic upon a showing of trademark infringement; rather the Lanham Act permits the Court to impose the remedy of disgorgement equitably, either as restitution for unjust enrichment or as a deterrent. *Western Diversified Servs. Inc. v. Hyundai Motor Am. Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005); 15 U.S.C. § 1117(a). The Tenth Circuit requires "a showing that Defendant's actions were willful to support an award of profits." *Id.*

The Court finds that there is at least some evidence of willful conduct by MCF directed at the potential infringement of Marco's marks. Taken in the light most favorable to Marco's, the evidence reflects that the Dyms chose to rebrand the MCF entities to Racca's in part because there was ongoing customer confusion between their operations and Marco's. Later, however, the Dyms chose to undo that rebranding and return the Ballpark and Tech Center locations to the MARCO'S COAL-FIRED PIZZA name. There can be little dispute that, as of that time, the Dyms were fully aware of Marco's operations, its claim of trademark rights in the name MARCO'S, and the possibility that their conduct might infringe on Marco's marks. This could be sufficient, if proven at trial, to permit the Court to find that the MCF's use of the Marco's marks, at least as of 2017, was willful. (The Court expresses no opinion as to whether MCF's use of those marks prior to the rebranding could also constitute willful conduct.) Accordingly, summary judgment is inappropriate as to this claim.

## V.  CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (**# 109**) is **GRANTED IN PART**.  Judgment shall enter in favor of the Golden, Colfax, and RPN Defendants on all claims.  Judgment shall also enter in favor of all Defendants on Claim 5 for dilution.  The Defendants are entitled to summary judgment on that portion of their counterclaim that seeks cancellation of the MARCO'S word mark and design mark, and those marks are cancelled prior to 2011 within the State of Colorado.[17]  The Motion is **DENIED** in all other respects.  There being claims that will now proceed to trial, the parties shall jointly contact chambers within 14 days to schedule the final pretrial conference.

Dated this 23rd day of September, 2019.

BY THE COURT:

Marcia S. Krieger
Senior United States District Judge

---

[17]  Neither party having requested certification of a partial judgment pursuant to Rule 54(b), the Court will not enter any judgment at this time.  Upon the completion of proceedings related to the remaining claims, the judgment discussed herein shall enter.